ERIK A. OLSON [8479]
EOLSON@MOHTRIAL.COM
JASON R. HULL [11202]
JHULL@MOHTRIAL.COM
**MARSHALL OLSON & HULL**
NEWHOUSE BUILDING
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655
FAX: 801.456.7656

ATTORNEYS FOR DEFENDANT

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| NORTHSTAR ALARM SERVICES, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ALDER HOME PROTECTION, doing business as ALDER HOLDINGS, LLC, a Utah limited liability company,<br><br>Defendant. | **DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br><br>Case No. 2:17-cv-01097-DN |

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure and DUCivR 7-1(a), defendant Alder Holdings, LLC ("Alder") hereby moves to partially dismiss the amended complaint (the "Amended Complaint") filed by plaintiff NorthStar Alarm Services, LLC ("NorthStar") and submits the following memorandum of points and authorities in support of its motion.

## RELIEF SOUGHT AND SPECIFIC GROUNDS FOR RELIEF

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Alder requests that the Court enter an order partially dismissing the Amended Complaint.  NorthStar's claims are based solely on allegations of purported deceptive and untrue statements or misrepresentations and these claims must be plead with the particularity required by Rule 9(b), including the who, what, when, where, and how of alleged misrepresentations.  With the exception of NorthStar's assertions that Alder made misrepresentations to 48 customers specifically identified in the Amended Complaint, NorthStar has failed to plead the remainder of its claims against Alder with sufficient particularity.  Therefore, NorthStar's causes of action should be dismissed except as to the 48 specifically described instances in which Alder allegedly made misrepresentations to former NorthStar customers.

## STATEMENT OF FACTS

1.     As the "First Claim for Relief," the Amended Complaint includes a claim for "Violation of the Lanham Act, 15 U.S.C. § 1125 *et seq.*".  Amended Complaint at ¶¶ 73–85.  The substantive allegations in that claim for relief are set forth in the following paragraphs of the Amended Complaint:

> 74.     In an effort to market and promote its own products and services, Defendant has made false and misleading statements about Northstar and Northstar's business as shown by, among other things, the false and misleading statements made by its sales representatives including those set forth herein.

> 75.     Defendant's false and misleading statements deceived, or had a tendency to deceive, a significant number of NorthStar's customers as to whether NorthStar is affiliated with Defendant.

> 76.     These statements were false and misleading statements that led to the confusion or mistake of NorthStar customers as to the origin, sponsorship, or approval of Defendant's goods and services in violation of 15 U.S.C. § 1125(a)(1)(A).

77.     These statements have confused, and will continue to confuse, NorthStar customers regarding the nature, origin, approval, sponsorship, or qualities of Defendant's goods and services in violation of 15 U.S.C. § 1125(a)(1)(B).

78.     Defendant's deceptive statements were and are material in that it lured, and is likely to continue luring in the future, NorthStar customers to purchase Defendant's products and services.

79.     At all relevant times herein, Defendant was engaged in a commercial activity, selling security systems to consumers.

80.     Defendant caused its fraudulent misconduct to enter interstate commerce.

81.     Defendant has injured NorthStar through its false representations either by a direct diversion of sales from NorthStar to Defendant or by a diminishing of the goodwill associated with NorthStar's goods and services.

82.     Defendant's misconduct will continue to injure NorthStar unless Defendant is restrained and enjoined.

83.     As a direct and proximate result of Defendant's unfair competition and deceptive practices, NorthStar has suffered and will continue to suffer monetary damages and irreparable harm.

84.     As a result, the Court should enter judgment in favor of NorthStar and award NorthStar injunctive relief, damages, Defendant's profits, NorthStar's attorney fees and costs, and treble damages pursuant to 15 U.S.C. § 1117(a).

85.     Additionally, this Court should award NorthStar punitive damages because Defendant's actions toward NorthStar were willful and malicious, or done with reckless indifference toward, and a disregard of, NorthStar's rights and the rights of others (such as by causing existing NorthStar customers to be double billed by two separate security companies.).

Amended Complaint at ¶¶ 74–85.

2.      As the "Second Cause of Action," the Amended Complaint includes a claim for "Unfair Competition—Utah Common Law." Amended Complaint at ¶¶ 86–91. The substantive allegations in that claim for relief are set forth in the following paragraphs of the Amended Complaint:

87.     Defendant's deceptive sales tactics aimed at NorthStar as alleged above were for the purpose of passing off, palming off, imitating or substituting Alder's alarm systems and monitoring services for those of NorthStar.

88.     Defendant's deceptive sales tactics aimed at NorthStar as alleged above caused confusion and induced NorthStar customers to enter into contractual arrangements with Alder for alarm services, thinking that the alarm services were being provided by NorthStar.

89.     Defendant's actions towards NorthStar and its customers constitutes unfair competition under Utah common law because those actions caused confusion or were likely to cause confusion in the minds of a substantial number of NorthStar customers.

90.     Defendant's tortious misconduct has caused and continues to cause NorthStar monetary losses and other damages or injury in an amount to be determined at trial.

91.     Defendant's actions were done knowingly, willfully, with actual malice, and in bad faith (such as by causing existing NorthStar customers to be double billed by two separate security companies), so as to justify the assessment of increased, exemplary, and punitive damages against Defendant in an amount to be determined at trial.

Amended Complaint at ¶¶ 87–91.

3.      As the "Third Claim for Relief," the Amended Complaint includes a claim for

"Commercial Disparagement."  Amended Complaint at ¶¶ 92–101.  The substantive allegations

in that claim for relief are set forth in the following paragraphs of the Amended Complaint:

93.     Defendant knowingly disparaged and published false and/or deceptive statements regarding NorthStar, its business operations, its products and services, and/or its contractual relationships with its customers to others, including NorthStar's customers.   Such false statements include, but are not limited to, statements that NorthStar was no longer in business, that NorthStar's accounts were being taken over by Defendant, that the customer's NorthStar security system was not operational or did not operate properly, and/or that the customer's contract with NorthStar had ended or was unenforceable.

94.     These false and/or deceptive statements by Defendant have been harmful to NorthStar's interests because of the damage done to NorthStar's goodwill, customer relationships, potential customer relationships, dealer relationships, and its reputation in the market.

95.     NorthStar has lost numerous customers because of Defendant's false statements.

96.     Defendant made the false and/or deceptive statements regarding NorthStar with the intent that its false and/or deceptive statements would cause harm to

- 4 -

NorthStar's interests (including without limitation its commercial and pecuniary interests), or else Defendant recognized or should have recognized that its false and/or deceptive statements regarding NorthStar were likely to do so.

97.     Defendant knew that the false and/or deceptive statements regarding NorthStar were false, or else Defendant acted with reckless disregard of the statements' truth or falsity.

98.     Defendant's false and/or deceptive statements regarding NorthStar were made with malice and have harmed NorthStar.

99.     As a direct and proximate result of Defendant's knowingly false and/or deceptive statements, NorthStar has suffered damages in an amount to be proven at the trial of this matter.

100.    Defendant's false and/or deceptive statements were the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of NorthStar and others (such as by causing existing NorthStar customers to be double billed by two separate security companies).  An award of punitive damages under Utah Code § 78B-8-201 is therefore justified.

101.    NorthStar is entitled to relief as set forth below in its Prayer for Relief.

Amended Complaint at ¶¶ 93–101.

4.      As the "Fourth Cause of Action," the Amended Complaint includes a claim for

"Intentional Interference with NorthStar's Existing and Prospective Relations."  Amended

Complaint at ¶¶ 102–109.  The substantive allegations in that claim for relief are set forth in the

following paragraphs of the Amended Complaint:

103.    NorthStar has existing and prospective economic relations with its customers, and NorthStar has prospective economic relations with its current and prospective customers because of its goodwill and ongoing marketing.

104.    Defendant knew of the existence of NorthStar's existing and prospective economic relations and intended to interfere with and disrupt those relations without justification and by an improper means.

105.    Defendant intentionally interfered with NorthStar's contractual relationship with its customers by either disrupting performance or making performance more expensive or difficult.

106.    Defendant's intentional interference with NorthStar's existing and prospective economic relations was undertaken using improper means including, without limitation, engaging in deceptive trade practices, violating the Lanham Act, engaging in unfair competition, committing the tort of injurious falsehood, and otherwise making false, misleading, and deceptive statements to NorthStar's customers in violation of statutory, regulatory, and common law prohibitions.

107.    Defendant's intentional interference directly caused NorthStar customers to cancel service, refuse renewal, and/or in some cases default on payments due under their contracts.

108.    As a result, NorthStar has suffered damages in an amount to be determined at trial.

109.    Defendant's actions toward NorthStar and its customers were the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of NorthStar and others (such as by causing existing NorthStar customers to be double billed by two separate security companies).  An award of punitive damages under Utah Code § 78B-8-201 is therefore justified.

Amended Complaint at ¶¶ 103–109.

5.    The Amended Complaint contains allegations regarding 48 specific instances detailing the "who, what, when, and where" in which Alder allegedly made misrepresentations to former NorthStar customers as set forth in paragraphs 25 to 72 of the Amended Complaint.

6.    Beyond these 48 specific instances, the Amended Complaint contains conclusory allegations alluding to possible[1] additional alleged misrepresentations made by Alder, *see* Amended Complaint at ¶¶ 14–24, 74, 87–89, 93, 105–106, but there is little to no detail as to when the alleged misrepresentations were made, which sales representative allegedly made such

---

[1] For example, NorthStar open-endedly alleges that it believes that the 48 specific instances are "just the tip of the iceberg, and those practices continue."  Amended Complaint at ¶ 24.

misrepresentations, what exactly was allegedly said,[2] and/or to which specific customers such

misrepresentations were allegedly made.  *See generally* Amended Complaint.

## <u>ARGUMENT</u>

**I.    NORTHSTAR INSUFFICIENTLY PLED THE MISREPRESENTATION ALLEGATIONS OF ITS CLAIMS UNDER THE HEIGHTENED PLEADING STANDARD OF RULE 9(b).**

Rule 9(b) of the Federal Rules of Civil Procedure applies to all of NorthStar's claims

because those claims are based on alleged misrepresentations by Alder and, therefore, sound in

fraud.  Rule 9(b) exists to prevent a plaintiff from using vague allegations of fraud as a pretext to

allow discovery into unknown wrongs.  Here, Alder asks the Court to dismiss all portions of

Northstar's claims other than the 48 specific customers that Northstar has disclosed.[3]  Those

claims sound in fraud and except as to the 48 customers, Northstar has not described the who,

what, when and where of the alleged fraudulent statements.  Having failed to satisfy Rule 9(b)

except as to 48 customers, Northstar's claims should be partially dismissed.

### A.    <u>Rule 9(b) Pleading Standard.</u>

Courts in the Tenth Circuit have determined that any claim that "sounds in fraud" must

be pled under the particularity requirements of Rule 9(b).[4]  As held in other Federal courts,

---

[2] Instead of pleading specific misrepresentations made to specific NorthStar customers, NorthStar instead offers "types of intentional misrepresentations to NorthStar's existing customers."  Amended Complaint at ¶ 18.

[3] Statement of Fact ("SOF") 5.

[4] *See e.g. Warner v. Bank of Am., N.A.*, No. 11CV342, 2011 WL 6310485, at *2 (D. Colo. Dec. 15, 2011) (Rule "9(b)'s particularity requirement applies to all claims 'sounding in fraud' regardless of the specific label Plaintiffs attach to the claim.") (internal citations omitted); *Jones v. Fife*, No. 206-CV-00030 PGC, 2007 WL 518428, at *6 (D. Utah Feb. 6, 2007) (indicating that Rule 9(b) will apply to breach of fiduciary duty claim if it is "based on fraud"); *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 932 (D. Kan. 2007) ("Although the language of Rule 9(b) confines its requirements to claims of . . . fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.") (internal citations omitted); *Brooks v. Bank of Boulder*, 891 F.

"'[b]y its terms, Rule 9(b) applies to all averments of fraud.  This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.'"[5]

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[6]  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud [] and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[7]  The purpose of this rule and its strict requirements "is, in part, to prevent the filing of meritless . . . fraud claims which the filing party subsequently fleshes out by conducting fishing expeditions under the liberal federal discovery rules."[8]  Otherwise stated,

---

Supp. 1469, 1480 (D. Colo. 1995) (applying Rule 9(b) to claim under Colorado Consumer Protection Act); *Morgan v. Ebert*, No. CIV. 85-C-1295W, 1986 WL 15778, at *1 (D. Utah 13, 1986) (applying rule 9(b) to RICO claim); *see also U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (applying Rule 9(b) to under False Claims Act).

[5] *Matthews v. LaBarge, Inc.*, No. 09-CV-177-GKF-PJC, 2009 WL 3673087, at *1 n.2 Okla. Nov. 2, 2009) (quoting *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004))

[6] Fed R. Civ. P. 9(b).

[7] *Sikkenga*, 472 F.3d at 726–27 (*quoting Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997) and *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)); *see also Wright v. Serrano*, No. 12-CV-0439-CVE-PJC, 2013 WL 183722, at *4 (N.D. Okla. Jan. 17, 2013) (*quoting Koch*, 203 F.3d at 1202) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir.1991)) (indicating that Rule 9(b) requires a complaint alleging fraud to "set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof.")).

[8] *Seattle-First Nat'l. Bank v. Carlstedt*, No. CIV-83-2425-B, 1984 WL 2430, at *4 (W.D. Okla. May 17, 1984) ("A plaintiff in a non-9(b) suit can sue now and discover later what the claim is, but a Rule 9(b) claimant must know what his claim is when he files it.") (internal citations omitted); *see also Greene v. Horizon/CMS Healthcare Corp.*, No. CIV 97-114JP/DJS, 1998 WL 2030956, at *2 (D.N.M. July 13, 1998) ("Rule 9(b) serves three main purposes:  (1) protecting a defendant's reputation from harm, (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the opposing party."); *Fid. Nat. Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 11, 344 P.3d 156 ("The rule also serves to deter filing exploratory suits with little information in hopes that discovery will uncover information to support the allegations.").

"[t]he purpose of Rule 9(b) is to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs."[9]  Indeed, a claim under Rule 9(b) "'should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one.'"[10]

Each of NorthStar's claims sounds in fraud and thus all of the allegations made to support these claims must satisfy the heightened pleading requirements of Rule 9(b).  However, as detailed below, NorthStar has failed to plead the "who, what, when, and where" of the alleged fraudulent conduct except as to the 48 specifically identified customers.  Accordingly, the Court should dismiss NorthStar's Amended Complaint except as to the specific 48 instances it has alleged.

B. **NorthStar's First Cause of Action for Violation of the Lanham Act Should Be Partially Dismissed.**

The Court should dismiss NorthStar's Second Cause of Action because it does not satisfy Rule 9(b).  Other courts have recognized that "[c]laims alleging false representation under the

---

[9] *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1241 (D. Utah 1999) (quoting In re Silicon Graphics, Inc. Sec. Litig., 970 F. Supp. 746, 752 (N.D.Cal.1997))*; Caprin v. Simon Trans. Svcs.*, 112 F. Supp.2d 1251, 1255 (D. Utah 2000) (same); *Anderson v. First Sec. Corp*, 157 F. Supp.2d 1230, 1236 (D. Utah 2001) (same); *see also Steed v. Warrior Capital, LLC*, No. CIV-06-348-F, 2007 WL 1110757, at *6 (W.D. Okla. Apr. 11, 2007) ("Thus, Rule 9(b) has the effect, among others, of obliging a fraud plaintiff, subject to the strictures of Rule 11, to give the fraud defendant and the court an intelligible factual preview, at the pleading stage, sufficient to establish that there is a viable fraud claim if the essential allegations are true and that the plaintiff is not merely using the complaint as a ticket to the discovery process in the hope of finding a case.").
[10] *Myers v. Dr. Phil Org*, No. 1:14-cv-007-TC, 2015 WL 476073, at *7 (D. Utah Feb. 5, 2015) (quoting *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 12, 314 P.3d 1079 (Utah Ct. App. 2013)); *see also Carlstedt*, 1984 WL 2430, at *4 (after allowing discovery as to non-fraud claims, court disallowed amending of complaint to add facts discovered during discovery to add to original fraud claims under Rule 9(b) because allowing such an amendment would "render Rule 9(b) a nullity").

Lanham Act are subject to Rule 9(b)."[11]  This includes cases where alleged misrepresentations are made about a competitor.[12]

In *Cocona, Inc. v. Singtex Industrial Co.*, the District of Colorado was faced with a Lanham Act claim based on allegations that a defendant knowingly misrepresented how it "stack[ed]" up next to a competitor's product.[13]  The court held that while the Tenth Circuit has not previously ruled on the application of Rule 9(b) to the Lanham Act, and "[d]espite the

---

[11] *MPC Containment Sys., Ltd. v. Moreland*, No. 05-C-6973, 2006 WL 2331148, at *2 Ill. August 10, 2006) (internal citations omitted); *see also, e.g.*, *Vertical Web Media, LLC v. Etailinsights, Inc.*, 14–cv–3220, 2014 WL 2868789, at *3–*4 (N.D. Ill. June 24, 2014) Rule 9(b) to a Lanham Act claim that "sound[ed] in fraud"); *Marvellous Day Elec. (S.Z.) Co., Ltd. v. Ace Hardware Corp.*, 900 F. Supp. 2d 835, 841 (N.D. Ill. 2012), *vacated in part on grounds by Marvellous Day Elec. (S.Z.) Co., Ltd. v. Ace Hardware Corp.*, Nos. 11 C 8756, 8768 (N.D. Ill. May 28, 2013) (claims that alleged false representation or false advertising the Lanham Act are subject to the heightened pleading requirements for fraud); *AirWair International Ltd. v. Schultz*, 84 F. Supp. 3d 943, 951 n. 3 (N.D. Cal. 2015) (alluding to rule's heightened pleading requirement for fraud to Lanham Act claim alleging fraud in procurement of trademark); *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1018 (N.D. Cal. 2012) (plaintiff's Lanham Act claim that defendant competitor had willfully maliciously made numerous misleading and false representations on its website and regarding plaintiff's produce processes and comparing them unfavorably with those used by defendant sounded in fraud, and thus complaint was required to meet heightened pleading standards under federal rule); *MMM Healthcare, Inc. v. MCS Health Management Options*, F. Supp. 2d 439, 447–48 (D.P.R. 2011) (provider of Medicare benefits alleged Lanham Act advertising claims—that competitor falsely told recipients that they would no longer be able receive care from plaintiff provider—with sufficient particularity to meet heightened fraud-pleading standard).

[12] *See LT Int'l Ltd. v. Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1244–46 (D. Nev. 2014) (noting that, while "nothing in the elements of a Lanham Act false advertising claim trigger Rule 9's heightened pleading standard", a plaintiff "may choose nonetheless to allege the complaint that the defendant has engaged in fraudulent conduct and rely entirely on that course of conduct as the basis of a claim," such that the claim is said to "sound in fraud" and must therefore satisfy Rule 9(b) for fraudulent conduct allegations) (internal citations *see also id.* at 1245 n.16 (it is likely that most false advertising claims under § 1125(a)(1)(B) trigger Rule 9(b) scrutiny because the first prong of the standard requires alleging that the defendant made a 'false' statement and, thus, the plaintiff will allege either that a 'false' representation was made with the intent to deceive (fraud), or that the false representation made unwittingly, without the intent to deceive (mistake).").

[13] No. 14-CV-01593-MJW, 2014 WL 5072730, at *6–*10 (D. Colo. Oct. 9, 2014).

bottom-line differences" in other cases, there is a similar reasoning that Rule 9(b) applies where there are allegations of fraud, or a unified course of fraudulent conduct.[14]  The court in *Cocona* stated that this "focus on discrete factual averments, rather than the elements of the legal claim, also finds support in the Tenth Circuit."[15]  Accordingly, the court held:

> Rule 9(b) applies to false-advertising claims under the Lanham Act only insofar as the factual averments allege intentional or knowing misrepresentations. Such averments must be pled with particularity.  To the extent the Lanham Act claim is based entirely on 'a unified course' of such conduct, the entire claim must be pled with particularity.[16]

Applying Rule 9(b), the court dismissed the Lanham Act claim for failing to plead with specificity the alleged "false and/or misleading" statements to customers because as with any claim subject to Rule 9(b), a Lanham Act claim that fails to allege the who, what, when, where, and how of the alleged misrepresentations will be rejected.[17]

---

[14] *Id.* at *7 (internal citations and quotations omitted).

[15] *Id.* (citing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251–52 (10th Cir. 1997)) (distinguishing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992) because that case applied to negligent misrepresentations rather than intentional misstatements)).

[16] *Id.* at *8.

[17] *See e.g., Id.* (rejecting allegations in support of a Lanham Act intentional misrepresentation claim because plaintiff "has not alleged the 'who, what, when, where and how of the alleged' falsehoods, as required under Rule 9(b)"); *Shuffle Master*, 8 F. Supp. 3d at 1246 (rejecting allegations in support of a Lanham Act intentional misrepresentation claim where—after recognizing the required identifiers and that "[t]he absence of even one of these identifiers justifies dismissal"—the allegations "gestures broadly" toward "who," by identifying "Defendant," and "where" by identifying a trade show, [but] the plaintiff "fails to offer the information to fill in the rest of the blanks. There is no indication of 'how' the alleged statements were made (i.e., orally, by email, in a letter, on a Post-it). More importantly, [the plaintiff] provides no insight into the factual content of any statement, despite its burden to allege with particularity 'what is false or misleading about the purportedly fraudulent statement, and why it is false.'") (internal citations and quotations omitted); *MPC Containment Sys., Ltd*, 2006 WL 2331148 at *3 (rejecting allegations in support of a Lanham Act intentional misrepresentation claim because "[a]lthough [the plaintiff] alleges the 'who,' 'what,' and 'where,' it fails to adequately provide the 'when' [despite stating it was before termination of employment] and 'how.'").

Here, the Court should apply Rule 9(b) to NorthStar's Second Cause of Action.  As in *Cocona*, NorthStar bases its Lanham Act claim solely on the allegations that "Defendant has made false and misleading statements about Northstar and Northstar's business as shown by, <u>among other things</u>, the false and misleading statements made by its sales representatives, <u>including those set forth herein</u>,"[18] which were purportedly "intentional[ly]" made.[19]

Yet, NorthStar fails to sufficiently plead the who, what, when, where, and how of any misrepresentations allegedly made by Alder, except as to 48 former NorthStar customers.[20] NorthStar only generally identifies the "types of intentional misrepresentations" allegedly made by Alder sales representatives.[21]  NorthStar fails to identify when the alleged misrepresentations were made.[22]  NorthStar fails to allege where the alleged misrepresentations took place.[23]  Other than the 48 customers, NorthStar does not identify any specific customer to whom the allegedly false statements were made.[24]  Finally, NorthStar fails to identify which sales representatives of Alder made which misrepresentations to which customers.[25]  Accordingly, under Rule 9(b) the Court should dismiss NorthStar's Second Cause of Action, except as to 48 instances that NorthStar sufficiently pled.

## C.   NorthStar's Second Cause of Action for Engaging in Unfair Competition Should Be Partially Dismissed.

The Court should also dismiss NorthStar's Third Cause of Action for Utah common law unfair competition because it fails to satisfy the requirements of Rule 9(b).  Many courts have

---

[18] SOF 1 (emphasis supplied).
[19] *See supra* n.2.
[20] SOF 5.
[21] *See supra* n.2; SOF 1–4, 6.
[22] SOF 1–4, 6.
[23] SOF 1–4, 6.
[24] SOF 1–4, 6.
[25] SOF 1–4, 6.

determined that "Rule 9(b) applies to common law unfair competition claims" that are grounded in alleged misrepresentations.[26]  As previously recognized by this Court and the Utah Supreme Court, a common law unfair competition claim under Utah law involves misrepresentations to customers:

> The Utah Supreme Court has recognized that unfair competition occurs when someone imitates through 'some device or designation the wares made and sold by another for the purpose of palming off or substituting his wares for those of another' <u>and in that way misleads 'the purchaser by inducing him to buy the wares made and sold by the first instead of those by the second.'</u>[27]

Here, the sole basis for NorthStar's Second Cause of Action is alleged misstatements by Alder representatives to NorthStar customers.[28]  As a result, the Court should apply Rule 9(b) to this claim.

---

[26] *K&N Eng'g, Inc. v. Spectre Performance*, No. EDCV0901900VAPDTBX, 2010 WL 11468976, at *7 (C.D. Cal. Feb. 9, 2010); *see also Qwest Commc'ns Co. v. Aventure Commc'ns Commc'ns Tech., LLC*, 86 F. Supp. 3d 933, 1010 n.35 (S.D. Iowa 2015), *reconsideration denied, denied*, No. 4:07-CV-00078-JEG, 2016 WL 7621350 (S.D. Iowa Sept. 2, 2016) ("[A] claim for for unfair competition under Iowa law does contain a fraud element.  Although the Court primarily finds that Qwest failed to state a claim of unfair competition under Iowa law, the Court Court also finds that it is a reasonable extension of the Iowa court's view in *Motor Accessories Accessories Manufacturing Co.*, 149 N.W. at 186, that Qwest's unfair competition claim lacks lacks the requisite specificity of time periods or locations and indication of who was making the the various alleged representations, and therefore does not satisfy Rule 9(b), and thus is an alternative basis for dismissing Qwest's unfair competition claim."); *Control Sols, LLC v. Oshkosh Corp.*, No. 10 C 121, 2011 WL 1131329, at *2 (N.D. Ill. Mar. 28, 2011) (applying Rule Rule 9(b) standard to common law unfair competition counterclaim that "involve[d] allegations allegations sounding in fraud."); *Buffet Crampon S.A.S. v. Schreiber & Keilwerth, Musikinstrumente Gmbh*, No. 3:09-CV-347RM, 2009 WL 3675807, at *17 (N.D. Ind. Nov. 2, 2, 2009) ("It appears that Buffet's complaint, at least in part, is 'grounded in fraud'—*i.e.*, that the the defendants 'attempted to deceive dealers, customers, and the public at large . . .'  If Buffet intends to bring forth an unfair competition claim under Indiana law sounding in fraud, it must must amend its complaint within fifteen days form [sic] the date of this order to meet the requirements of Rule 9(b) as to such averments.").

[27] *Framed Wall Art, LLC v. PME Holdings, LLC*, No. 2:08CV781DAK, 2008 WL 5205822, *3 n.5 (D. Utah Dec. 12, 2008) (emphasis supplied) (quoting *Overstock, Inc. v. Smartbargains, Inc.*, 2008 UT 55, ¶ 13, 192 P.3d 858).

[28] SOF 2.

Yet, as with the Lanham Act claim, NorthStar fails to sufficiently plead the who, what, when, where, and how of the alleged misrepresentations, except as to the 48 same customers set out above.[29]   Accordingly, NorthStar's Second Cause of Action should be dismissed, except as to the 48 customers.

### D.   NorthStar's Third Cause of Action for Commercial Disparagement Should Be Partially Dismissed.

The Court should also dismiss NorthStar's Third Cause of Action for commercial disparagement[30] given that the crux of this claim is a misrepresentation claim and NorthStar fails to satisfy the requirements of Rule 9(b) in pleading the claim.  Many courts have dismissed commercial disparagement claims that do not stand up to the Rule 9(b) particularity standard.[31]  This is logical because a commercial disparagement claim in Utah requires that a plaintiff "must prove (a) falsity of the statement made, (b) malice by the party making the statement, and (c)

---

[29] *See supra* Point I(B), incorporated herein by reference.

[30] This cause of action is referred to by courts in various ways, but "business and trade libel/injurious falsehood . . . are merely different names for a single tort."  *Farm Bureau Life Ins. Co. v. Am. Nat. Ins. Co.*, 505 F. Supp. 2d 1178, 1191 (D. Utah 2007).

[31] *See, e.g.*, *Vazirani v. Heitz*, No. CIV.A. 09-1311-MLB, 2011 WL 915377, at *4 (D. Mar. 15, 2011) ("Defendants contend that plaintiffs' claims of defamation and trade libel dismissed because they have failed to allege the facts surrounding the alleged statements. . . . Plaintiffs' allegations concerning defamation and trade libel are nothing more than allegations that are insufficient to raise a right to relief.  There is no allegation of the any statement made by defendants.  Further, there is no allegation that any statement was published to a third party.  Plaintiffs' claims must therefore be dismissed."); *G.U.E. Tech, Panasonic Avionics Corp.*, No. SACV1500789CJCDFMX, 2015 WL 12696203, at *4 (C.D. Sept 15, 2015) ("And although courts do not always explicitly hold that trade libel claims are subject to Rule 9(b)'s particularity requirements, most courts apply some sort of heightened pleading standard to trade libel claims.  [collecting cases].").

special damages."[32]  Moreover, this is consistent with how courts within the Tenth Circuit handle

defamation claims,[33] which are similar to commercial disparagement claims.[34]

     As with its Lanham Act and common law unfair competition claims, NorthStar's Third

Cause of Action for commercial disparagement fails to identify with any level of particularity the

who, what, when, where, or how of the alleged misrepresentations except as to the 48

---

[32] *Farm Bureau Life Ins. Co.*, 505 F. Supp. 2d at 1191 (quoting *Direct Import Buyers Ass'n v. KSL, Inc.*, 538 P.2d 1040, 1042 (Utah 1975)).

[33] *See, e.g.*, *Rowe v. DPI Specialty Foods, Inc.*, Case No. 2:13-cv-00708-DN-DJF, 2015 WL 13047675, *3–*4 (D. Utah August 20, 2015) ("In many cases, courts have found allegations to be 'insufficient when [they do] not state 'the nature or substance of the acts allegedly committed by defendants,'' or where they 'contained merely broad and general statements . . . but . . . 'no allegation whatever of the contents, nature or substance' of any such false statements.'  In short, 'the allegation of the conclusion is not sufficient; the pleading must describe the nature of the substance of the . . . words complained of' in 'words or words to that effect,' and although 'there is no Utah law directly requiring that the complaint also allege with complete specificity when, where, to whom, or by whom, the alleged defamatory statements were made,' other courts have generally required these elements.  This specificity requirement is not a Utah construct:  federal courts have consistently interpreted Fed. R. Civ. P. 8(a) as requiring that defamation claims be pleaded with particularity to provide a defendant with fair notice."); *Serrano*, 2013 WL 183722 at *4 ("Plaintiff has not adequately alleged a fraud or defamation claim against defendants. The amended complaint states when certain actions allegedly occurred, but it does not contain any allegations describing any specific statements made by any defendant. Plaintiff may not satisfy the particularity requirement of Rule 9(b) by generally alleging that "defendants" made certain unidentified false statements, and she has not stated a fraud or defamation claim against defendants."); *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 799–800 (D. Utah 1988) ("The Court holds that the conclusory allegations in paragraph seventy-one do not meet the particularity requirements with which a defamation claim must be alleged. Utah law requires that a claim must identify the defamatory statement either by its "words or words to that effect;" general conclusory statements are inadequate.  Although there is no Utah law directly on point, courts have generally required the complaint to also allege when, where, and to whom the alleged defamatory statement was made.  The purpose of the particularity requirement in pleading defamation is to allow the court to decide if the statement is defamatory and to formulate a defense.").

[34] *See, e.g.* *Yousuf v. Cohlmia*, 718 F. Supp. 2d 1279, 1286 (N.D. Okla. 2010), *aff'd*, 741 F.3d 31 (10th Cir. 2014) ("As explained in *Forbes, Inc. v. Granada Biosciences, Inc.*, 123 S.W.3d 167 (Tex. 2003), '[a] business disparagement claim is similar in many respects to a defamation action'; they differ 'in that defamation actions chiefly serve to protect the personal reputation of an injured party, while a business disparagement claim protects economic interests.'").

customers.[35]  On the same grounds as these other claims, the Court should dismiss NorthStar's

Fourth Cause of Action, except as to the 48 identified customers.

      **E.**    **NorthStar's Fourth Cause of Action for Intentional Interference with Existing and Prospective Economic Relations Should Be Partially Dismissed.**

The Court should likewise dismiss NorthStar's Fourth Cause of Action for tortious

interference given that the claim sounds in fraud and NorthStar has failed to satisfy the

requirements of Rule 9(b) in pleading the claim.  Courts in the Tenth Circuit and elsewhere have

determined that "[i]n the context of a tortious interference claim, 'the heightened pleading

standard [of Rule 9(b)] only applies to the fraudulent inducement element of the tortious

interference claim.'"[36]  Indeed, where, as here, "fraudulent misrepresentation is the lynchpin" of

a tortious interference claim, Rule 9(b) applies.[37]

In *Purac America Inc. v. Birko Corp.*, plaintiff alleged that defendant interfered with

plaintiff's customer relationships by allegedly misrepresenting that it "was legally entitled to

sell" plaintiff's products and that "certain large players in the [market] ha[d] switched to

[defendant] when in fact they ha[d] not."[38]  Upon a motion to dismiss, the Court concluded:

"[Plaintiff's] theory is that [defendant] induced [plaintiff's] customers to end their relationships

with [plaintiff] by making false statements to the customers.  Thus, in alleging this inducement,

[plaintiff] must satisfy the requirements of Rule 9(b)."[39]

---

[35] *See supra* Point I(B), incorporated herein by reference.

[36] *Purac America Inc. v. Birko Corp.*, No. 14-CV-01669-RBJ, 2015 WL 1598065, at *6 Colo. Apr. 8, 2015) (quoting *Dawson v. Litton Loan Servicing*, LP, No. 12–CV–01334–KMT, 2013 WL 1283848, at *8 (D. Colo. Mar. 28, 2013) (alterations in original)).

[37] *Id.* at *6 (quoting *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 8, 14 (1st Cir. 2009)).

[38] *Id.* at * 2.

[39] *Id.* at * 6 (internal citations omitted).

Here, NorthStar premises its tortious interference claim on allegations that Alder "us[ed] improper means including, without limitation, engaging in deceptive trade practices, violating the Lanham Act, engaging in unfair competition, committing the tort of injurious falsehood, and otherwise making false, misleading, and deceptive statements to NorthStar's customers in violation of statutory, regulatory, and common law prohibitions."[40]  These "improper means" are based entirely on alleged misrepresentations made by Alder sales representatives.[41]  As in *Birko*, because "[NorthStar's] theory is that [Alder] induced [NorthStar's] customers to end their relationships with [NorthStar] by making false statements to the customers. . . .  in alleging this inducement, [NorthStar] must satisfy the requirements of Rule 9(b)."[42]

Here, without the level of detail required by Rule 9(b), Alder is left guessing as to NorthStar's allegations and potential damages claim, except as to the 48 identified customers. NorthStar's Fifth Cause of Action should be dismissed because NorthStar fails to allege with specificity the who, what, when, where, and how regarding its allegations of misrepresentations made by Alder, except as to the 48 identified customers.[43]

### F.      NorthStar Cannot Leave Its Fraud-Based Claims Open-Ended.

The Court should grant Alder's motion because otherwise, NorthStar's fraud-based claims will be left unarticulated and open-ended.  As demonstrated above, this is precisely what Rule 9(b) was created to avoid.[44]  Indeed, "a Rule 9(b) claimant must know what his claim is when he files it."[45]  Where a party has partially pled allegations sufficiently under Rule 9(b), but

---

[40] SOF 4.
[41] *See supra* n.2.
[42] *Birko*, 2015 WL 1598065 at * 2.
[43] *See supra* Point I(B).
[44] *See supra* nn.8-10 and accompanying text.
[45] *Carlstedt*, 1984 WL 2430 at *4; *see also Farlow v. Peat, Marwick, Mitchell& Co.*, 956 F.2d 982, 990 (10th Cir. 1992), *overruled on other grounds by Central Bank v. First*

has partially pled insufficiently, the Tenth Circuit has held that it is appropriate to grant a motion to dismiss as to the insufficiently pled allegations.[46]

Here, while NorthStar knows its fraud based claims relating to the 48 specifically identified customers, it does not know its claims against Alder as to any other customers, and should not be permitted to use discovery to ferret out further claims and allegations.  But that is precisely what NorthStar is aiming to do with its vague and open-ended allegations.  The clearest example of NorthStar's attempt to hold onto the possibility of additional claims of fraud beyond the 48 specifically detailed instances is its allegation that NorthStar believed such instances to be "just the tip of the iceberg."[47]  Indeed, throughout the Amended Complaint NorthStar vaguely alludes to misrepresentations made to any number of NorthStar customers, or similarly leaves the door open to the possibility that more fraudulent misrepresentations were made than the 48 specifically identified instances.[48]  Because these vague, open-ended suggestions of possible additional instances of fraud beyond the 48 specifically identified instances fail to satisfy the requirements of Rule 9(b), they should be dismissed.

## CONCLUSION

Based on the foregoing, the Court should enter an order dismissing NorthStar's Amended Complaint, except as to the 48 customers specifically identified in the Amended Complaint.

---

_InterstateBank_, 511 U.S. 164 (1994) ("[A] plaintiff alleging fraud must know what his claim is when he files it.").

[46] _See, e.g._, _Monus v. Colorado Baseball 1993, Inc._, 103 F.3d 145 (10th Cir. 1996) (granting a Rule 9(b) motion in part because a "reasonably particularized averment was made" in the complaint against one defendant, but the "remainder of the allegations of fraudulent misrepresentations . . . become vague and disconnected as to the actions having any real connection to the [other defendants].").

[47] _See supra_ n.1.

[48] SOF 6 (referencing paragraphs from the Amended Complaint that provide generalized, nonspecific allegations of past and present fraud based behavior of Alder representatives to "a significant number of NorthStar's customers.").

DATED this 16th day of January, 2018.

                                       **MARSHALL OLSON & HULL, P.C.**

                                       By:     /s/ Jason R. Hull
                                                 ERIK A. OLSON
                                                   JASON R. HULL

                                       ATTORNEYS FOR DEFENDANT ALDER HOLDINGS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2017, a true and correct copy of the

foregoing **DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** was served

by the method indicated below, to the following:

Matthew N. Evans
Eric G. Benson
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah 84111

(X)    Electronic CM/ECF Notification
(  )    U.S. Mail, Postage Prepaid
(  )    Hand Delivered
(  )    Overnight Mail
(  )    Facsimile

/s/ Kevin M. Paulsen